**BANKS v. KING FEATURES SYNDI-CATE, Inc., et al.**

District Court, S. D. New York.
Sept. 14, 1939.

Frank P. Walsh, of New York City, and Roy F. Ford, of Tulsa, Okl., for plaintiff.

McCauley & Henry, of New York City (Charles Henry, of New York City, of counsel), for defendants.

CONGER, District Judge.

A woman, resident in Oklahoma, sues two New York corporations to recover money damages for the alleged invasion of her right of privacy. The defendants, before answer, challenge the sufficiency of the complaint, on the ground that it fails to state a claim upon which relief can be granted. Rule 12(b) (6), (d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

For the purpose of this motion, the following facts must be assumed:

In November, 1936, the plaintiff consulted two osteopathic physicians and surgeons at Tulsa, Oklahoma, who, in the course of their treatment, took and developed an X-ray picture of the plaintiff's pelvic region, which disclosed a six inch steel hemostat, or surgical clamp, in her abdomen. This foreign body, which plaintiff had carried for four years as the result of a prior operation, was removed by her Tulsa doctors.

These doctors (not sued), violating her confidence, and without her consent, turned over a copy of the X-ray to a Tulsa newspaper reporter (not sued). This reporter, in turn, for a consideration, passed the X-ray picture along to the defendant, King Features Syndicate, Inc. (hereafter referred to as King Features), which corporation received it with knowledge of the foregoing facts.

Thereupon, King Features caused an article to be written, which recounted the discovery of the hemostat in plaintiff's abdomen by means of an X-ray photograph; told of its removal; made mention of other cases where foreign matter was left in the bodies of patients after surgical operations; cited certain medical authorities on the subject, and explained the precautions taken by the medical profession to avert an incident such as this. King Features, after causing the X-ray and the accompanying article to be copyrighted, sold it to the defendant, New York Evening Journal, Inc. (hereafter referred to as the Journal).

These are the acts which King Features is said to have committed for purposes of trade.

It is said that the defendant Journal acted wrongfully, in that with knowledge of the means by which the X-ray picture was originally acquired, and for purposes of trade, it published the copyrighted article and X-ray on January 2, 1937 in the New York Journal-American, a newspaper which it owned, and which circulated throughout every state in the United States and the District of Columbia. "No recovery of damages is claimed or asked for herein in those states * * * where the right of privacy is not recognized". Plaintiff further asserts in her complaint "that her rights are recognized in all the states of the Union and District of Columbia", save and except the state of Washington, the state of Michigan and the state of Rhode Island, which three latter states have expressly rejected the doctrine of the right of privacy", and, continues the plaintiff, "no right of recovery or claim for damages is made insofar as the three last named states are concerned."

No claim is made that the copyrighted article, or the X-ray picture, is false or untrue. It is charged, however, that she has been caused to suffer humiliation, agony and loss of social prestige by this publicity.

This right of privacy, which plaintiff seeks to vindicate, is of modern origin. It has been defined as "the right to be let alone; the right of a person to be free from unwarranted publicity." 21 Ruling Case Law, p. 1196. In 54 Corpus Juris, p. 816, it is defined as "the right of an individual to be let alone or to live a life of seclusion, or to be free from unwarranted publicity, or to live without unwarranted interference by the public about matters with which the public is not necessarily concerned."

█ If we concede the concept of a right of privacy, it is essential to determine what acts and events constitute an invasion of that right. This is a question of the law of torts, and since that law varies in different states, it is necessary to know the particular state wherein the defendants committed the acts complained of. Whether the defendants acted illegally, and whether the plaintiff has a cause of action, must be determined, not by the lex fori, but by the lex loci delictus. 12 Corpus Juris 452. "The law of the place of wrong determines whether a person has sustained a legal injury." American Law Institute's Re-Statement of the Law of Conflict of Laws, Sec. 378.

█ If the whole of the alleged tortious transaction took place within a single state, the law of that state would govern. But if there be a series of acts, or a train of events, cutting across state lines, the question as to what law should be applied becomes a bit involved. In such a case, the law of the "place of wrong" will control. According to the Restatement of the Law of Conflict of Laws, Sec. 377, "the place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place". See also Conklin v. Canadian-Colonial Airways, 266 N.Y. 244, at page 248, 194 N.E. 692.

█ "If no cause of action is created at the place of wrong, no recovery can be had in any other state." Re-Statement of the Law of the Conflict of Laws, Sec. 384. To the same effect, see Salimoff & Co. v. Standard Oil Company, 262 N.Y. 220, 186 N.E. 679, 89 A.L.R. 345.

█ In my opinion, the last event necessary to make an actor liable for invading this so-called right of privacy, would be in that state where the seal of privacy was first broken. Where, in other words, did the plaintiff's name and X-ray picture first become public property? That, as I see it, would be the final event spelling out this type of tort.

█ We have two defendants here. It is impossible to tell from the language of the pleading, whether King Features broke this seal of privacy and made public the plaintiff's name and X-ray picture in the state of Oklahoma, in the state of New York, or in some other state. If this act occurred in Oklahoma, King Features would be answerable under Oklahoma law.

If this last act were committed in New York, or in some other state, then the law of Oklahoma would not control.

The same difficulty exists in trying to determine from the complaint, just where the Journal broke the seal of privacy. To say that the New York Journal-American was circulated throughout every state in the Union does not supply the answer.

I believe that substantial justice will be done if the hearing and determination of this motion is deferred until the trial, when the essential facts can be adduced. Rule 12(d), Federal Rules of Civil Procedure.

Submit order on notice.