Frances **MULVIHILL**, Plaintiff,

v.

**FURNESS, WITHY & CO., Ltd.,**
Defendant.

United States District Court
S. D. New York.

Nov. 14, 1955.

Edward Raff, New York City, for plaintiff, Jacob Rassner, New York City, Herbert W. Sterenfeld, Brooklyn, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant, Theodore P. Daly, New York City, of counsel.

HERLANDS, District Judge.

The question of the validity of a time limitation-of-liability clause in a steamship ticket is presented by this motion for summary judgment by defendant.

Plaintiff, an American citizen and a New York resident, brought a civil action on April 14, 1955 against defendant, a British corporation. Defendant owns, operates and controls a vessel, the S.S. Ocean Monarch, which is registered under the laws of the United Kingdom of Great Britain.

The complaint alleges that plaintiff, while a passenger on defendant's vessel, was injured by a fall when a defective wooden reclining deck-chair collapsed or broke under her while she was attempting to seat herself in it. This alleged incident and injury occurred on or about September 18, 1952, when the vessel was on its return trip from Bermuda to New York. Plaintiff had boarded the vessel on or about September 13, 1952, when it left New York for Bermuda. The complaint, pleading two causes of action, seeks damages totaling $30,000. One cause of action (for $15,000 damages) is based on defendant's alleged negligence. The second cause of action (for $15,000 damages) is based on defendant's alleged breach of contract for the safe carriage and transportation of plaintiff.

Defendant denies the material allegations of the complaint and also sets up seven defenses. For purposes of this motion, we need mention only the fifth and sixth defenses. The fifth defense alleges that the complaint was not filed within

one year after the cause of action arose. The sixth defense alleges that plaintiff failed to give defendant written notice of her claim, with full particulars, within six months after the date of injury. Both of these defenses are predicated upon paragraph "14" of the contract of carriage contained in the long-form ticket.

Paragraph "14" of the contract of carriage reads as follows:

"14. The shipowner shall not be liable for any claim whatsoever of the passenger, his heirs, executors, administrators, assigns, next of kin, dependents or personal representatives unless written notice thereof with full particulars shall be given to the shipowner or agent as follows: (a) within six months after the death or injury occurred in respect of any claim for loss of life or bodily injury in any case where Section 4283A of the Revised Statutes of the United States [46 U.S.C.A. § 183b] shall apply: (b) within two months after the death of the passenger when occurring before landing or within fifteen days after landing or the abandonment or breaking up of the voyage in respect of any claim for loss of life, except where said Section 4283A shall apply; (c) within fifteen days after the passenger shall be landed, or the voyage is abandoned or broken up, in respect of any claim whatsoever unless such claim is included within one of the two categories just mentioned. Suit to recover on any claim shall not be maintainable unless commenced as follows: (1) within one year after the death or injury occurred in respect of any claim for loss of life or bodily injury where said Section 4283A shall apply; (2) within six months after the passenger shall be landed from the vessel or the voyage shall be abandoned or broken up or after the death of the passenger when occurring before landing, which ever may be the case, in respect of any claim whatsoever unless

such claim is included within category (1), just mentioned. Any action by the shipowner or its agents or attorneys in considering or dealing with claims where the provisions of this ticket have not been complied with, shall not be considered a waiver of such requirements."

From the pleadings, examination before trial of plaintiff, and memoranda submitted by the parties, the following additional facts appear: Plaintiff is a registered nurse. She herself purchased the ticket about two weeks before she actually boarded the vessel. At the time she purchased the ticket from Thomas Cook & Sons, travel agent, she personally signed the ticket. The ticket remained in her possession until the day she sailed, September 13, 1952, at which time she turned in the ticket upon boarding the vessel. Plaintiff did not read the provisions contained in the ticket.

Plaintiff claims that, as a matter of law, the above quoted provisions of paragraph "14" are not binding upon her; that the ticket does not specifically direct the passenger's attention to the terms and conditions of the contract embodied in the ticket; that, whereas all of the essential parts of the contract are printed in bold black print, paragraph "14" appears in much lighter print; and finally, that paragraph "14" does not appear on the face of the contract, but "only on the third and fourth pages in very small print."

Defendant argues that the words "Contract Ticket" appear in bold black type in the upper righthand corner of the ticket; that this constitutes adequate notice to the passenger; that the contract is introduced by the clause beginning with the words: "It Is Mutually Agreed," which words appear over plaintiff's signature on the first page of the ticket; that paragraph "14" is an integral part of the contract; and that, as a matter of law, the time limitations prescribed in paragraph "14" are valid, binding and conclusively determinative of the motion at bar.

A photostatic copy of the contract ticket is before the Court; and all of the other relevant and material facts are not in dispute. In the interest of a fuller description of the ticket, the following details may be added to those already cited:

On "Page One" of the contract ticket, the following provision appears:

"It Is Mutually Agreed between the shipowner and the passenger named herein, that in consideration of the payment to the shipowner of the passage money by or on behalf of the passenger, the shipowner will provide the said passenger with passage as stated herein, unless prevented by some unforeseen circumstance, on the terms hereinafter stated, which shall govern the relations between the shipowner, vessel and passenger in every possible contingency wheresoever occurring and even in the event of deviation or unseaworthiness of the vessel at the inception of the voyage or subsequently and whether or not this ticket has been signed by, or on behalf of the passenger.

"These terms supersede all representations, promises and agreements whatsoever that may have been made, or may be claimed to have been made, to or with the intending passenger by anyone on behalf of the shipowner. These terms shall not be considered modified or waived except by an express written modification or waiver signed by the master or an executive officer of the shipowner."

Immediately following the above-quoted language are these words in large, clear capital letters:

"The Terms Hereinabove Mentioned Form Part of the Contract Ticket and are as Follows:"

There is then set forth a paragraph numbered "1," which is continued on "Page Two." At the end of that portion of paragraph "1" which is printed on "Page One," are the words: "(Continued on Pages Two, Three and Four)." In the upper lefthand corner of "Page Two" are the following words: "(Terms Continued from Page One)." In the upper lefthand corner of "Page Three" are the following words: "(Terms Continued from Page Two)." In the upper lefthand corner of "Page Four" are the following words: "(Terms Continued from Page Three)."

In the lower lefthand corner of "Page One" are the following words:

"I agree to the terms of this
Contract Ticket
[Signed] Frances Mulvihill
Signature of Passenger Or Agent
Or Purchaser of Ticket."

Paragraph "14" appears on "Page Three" and "Page Four" of the ticket.

Certain findings of fact become immediately clear: (1) the contract ticket cites R.S. § 4283A, 46 U.S.C.A. § 183b, and the time-limitation provisions come within the permissive limits sanctioned by that statute; (2) plaintiff, a registered nurse, personally purchased and then retained the ticket in her personal possession for about two weeks before surrendering it to defendant; (3) plaintiff personally signed the ticket immediately underneath words that plainly notified her that she was signing a contract the terms of which were set forth in the body of the ticket; and (4) plaintiff's ignorance of those terms was self-imposed and in the face of a contract ticket whose format was fair.[1]

The public policy promulgated by Congress in 46 U.S.C.A. § 183b[2] val-

---

1. Cf. dissenting opinion of Frank, C. J., in Siegelman v. Cunard White Star Ltd., 2 Cir., 1955, 221 F.2d 189, 204–206.

2. 46 U.S.C.A. § 183b. Stipulations limiting time for filing claims and commencing suit

"(a) It shall be unlawful for the * * owner of any sea-going vessel * * * transporting passengers * * * to provide by rule, contract, regulation, or otherwise a shorter period for giving

idates the time limitation for instituting suit as contained in the ticket.

■ Admiralty law determines the validity of the contractual limitation of liability in a steamship ticket.[3] In this case, a specific federal statute has preempted the field; and the application of § 183b, Title 46 U.S.C.A., is dispositive of the validity of these contractual limitations and, consequently, of plaintiff's right to bring suit at this time.

■ Although the complaint recites that jurisdiction is based upon diversity of citizenship, the cause of action is actually founded upon a maritime tort, cognizable in admiralty. The substantive law to be applied "is the 'general maritime law' of which the ultimate expositor is the Supreme Court of the United States."[4] This is not a case where federal jurisdiction is based solely upon diversity of citizenship and where the rule of Erie R. R. Co. v. Tompkins[5] requires application by the federal court of substantially the same law as would be applied by courts of the state in which the federal court is sitting.[6] These considerations require the court to apply the federal choice-of-law rule.

The next inquiry is: what law governs the issues in this case?[7] We are not concerned with the law applicable to the accident. Instead, we must decide what law applies to the validity and interpretation of the limitation clauses in the "Contract Ticket."

■ The ticket (paragraph "18") stipulated: "All questions arising on this ticket shall be decided according to English Law with reference to which this contract is made."[8] Inasmuch as this ticket has been held to constitute a contract,[9] the provision that English law should govern must be taken to represent the intention of both parties. If effective, this provision, under the federal choice-of-law rule, renders English law applicable here.[10] However, since it may not be assumed that the parties' choice of law will automatically foreclose this Court from applying another law, the fundamental inquiry is whether the contract provision here should have the effect, under federal conflicts rules, of making the English law applicable to this case. The resolution of this question entails the consideration of two elements: (1) the parties' intention and (2) the effect that the federal conflicts rule should accord their intention.

The "major purpose" of referring to English law was to assure defendant "of a uniform result in any litigation no matter where the ticket was issued or where the litigation arose".[11] The reference to English law is all-inclusive: the language of the contract clause—embracing "all questions"—indicates that both

---

notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred."

3. Jansson v. Swedish-American Line, 1 Cir., 1950, 185 F.2d 212. See also 30 A.L.R.2d 1385.

4. Ibid., 185 F.2d at page 216.

5. Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

6. See Siegelman v. Cunard White Star Ltd., 2 Cir., 1955, 221 F.2d 189, 192. Moreover, this is not a case where the federal court is considering a claim based upon a state-created right.

7. Scheibel v. Agwilines, Inc., 2 Cir., 1946, 156 F.2d 636, did not involve the ques-

tion whether the law of a foreign country should be applied. The issue in that case was whether legislation of the State of Florida (which had the effect of providing a four-year statute of limitations) could invalidate the public policy reflected in 46 U.S.C.A. § 183b.

8. However, paragraph "15" of the ticket explicitly states, in part: "This contract is subject to the provisions of Sections 4281 to 4286 inclusive of the Revised Statutes of the United States [46 U.S.C.A. §§ 181–186], * * *."

9. Moore v. American Scantic Line, Inc., 2 Cir., 1941, 121 F.2d 767, affirming, D.C., 30 F.Supp. 843; Foster v. Cunard White Star Ltd., 2 Cir., 1941, 121 F.2d 12.

10. Siegelman v. Cunard White Star Ltd., supra note 6, 221 F.2d at page 193.

11. Ibid., 221 F.2d at page 194.

the validity as well as the interpretation of the contract should be governed by English law.

Plaintiff does not dispute defendant's contention that the ticket should be treated as a contract; nor does plaintiff deny that failure to commence suit within the limitation period specified by the contract would constitute a defense under English law.[12] Since the same result would follow under American law, no real conflicts question is posed with respect to the validity of the limitation clause.

But the fact that the validity of the limitation provision presents no conflicts problem and is both consistent with uniformity of result and the parties' presumed intention, does not automatically mean that all of the issues in the case are to be governed by English law. Indeed, the very motion before us, involving a substantive determination of the merits of plaintiff's claim, calls for the application of principles developed under Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A. These principles, called into play by defendant's motion for summary judgment, constitute a developing body of federal law. How then may English law be applied in determining this motion for summary judgment?

 This contract was made in New York for a voyage commencing in New York. The usual rule is that its provisions must be interpreted according to New York law,[13] or, as we have indicated, by the maritime law applied uniformly in all courts of the United States.

 There are additional reasons for our conclusion that federal law should govern the interpretation of this contract. The interpretation of the limitation clause relied upon by defendant involves important considerations of internal public policy.[14] Since the document was in fixed, printed form, prepared by defendant and tendered to plaintiff, the clause referring to English law must be strictly construed against defendant.[15] The parties' reliance on a statutory provision of American law, § 183b, indicates that construction of the limitation clause be determined by decisions of federal courts construing that statute. Important issues raised by the interposition of § 183b include the need to give defendant written notice with "full particulars," as defendant asserts; the binding nature of the limitation clause when the contract is not read by plaintiff nor brought directly to her attention; and the propriety of raising the limitation provisions by a motion for summary judgment.

 Finally, the most salutary resolution of the conflicts problem is to ascertain the forum having the closest connection with the matters raised by the litigation. Here (in direct contrast to the Jansson case, where foreign law was held applicable) the plaintiff is an American citizen; the contract was made in the United States; and the voyage commenced in an American port. The "center of gravity" of the contract is within the jurisdiction of the United States. These facts establish a sufficient nexus to invoke the maritime law as expounded by the Supreme Court and supplemented by an express Congressional enactment, 46 U.S.C.A. § 183b.

Assuming, then, that the propriety of the motion for summary judgment must be considered with reference to the maritime law as supplemented by the relevant

---

12. Jones v. Oceanic Steam Navigation Co. (1924) 2 K.B. 730, cited in Siegelman v. Cunard White Star Ltd., 221 F.2d at page 194.

13. See Scudder v. Union National Bank, 1875, 91 U.S. 406, 412, 23 L.Ed. 245.

14. Scheibel v. Agwilines, Inc., supra, note 7; Witte v. N. V. Nederlandsch Amerikaansche, etc., D.C.D.N.J.1951, 96 F.Supp. 485.

15. See Aschenbrenner v. United States Fidelity & Guaranty Co., 1934, 292 U.S. 80, 84-85, 54 S.Ct. 590, 78 L.Ed. 1137; Phoenix Mutual Life Insurance Co. v. Flynn, 1948, 83 U.S.App.D.C. 381, 171 F.2d 982, 984-985.

statute of Congress, we turn to the question whether, as a matter of law, defendant is entitled to judgment on the merits.[16]

A passenger is bound by the terms of the contract of carriage embodied in the transportation ticket.[17] Such contract provisions are binding regardless of whether or not they were actually read by the passenger, provided the provisions are not unlawful.[18] It has been declared that the purpose of the relevant statute, 46 U.S.C.A. § 183b, is to regulate the "relationship between a common carrier of passengers and passengers", to remedy abuses which had arisen through the efforts of shipowners engaged in common carriage to limit unreasonably their obligations, and that "the Congress has created a new public policy as to what it thinks to be reasonable, just and fair. It has arbitrarily set a period of time within which a notice must be given, and arbitrarily set a period of time within which suit must be commenced."[19]

The only substantial issue of law raised is whether or not this case falls into the category of decisions excusing the passenger from the terms of the contract as a matter of law. In The Majestic,[20] the Supreme Court held that a limitation provision in a steamship ticket which amounts only to "a mere notice" and which is not formally incorporated into the contract of passage, is not *per se* binding.[21] Only in such situations does it become necessary to ascertain whether such notices were actually brought to the attention of the passenger.[22]

Whether the provisions of the ticket constitute mere notice or whether they are formally incorporated into the contract of passage is, therefore, a preliminary issue of fact vital to the resolution of the question of their binding character as a matter of law. In The Kungsholm, the court pointed out that "there is nothing above the carrier's signature to incorporate expressly or by reference any of these stipulations; and, as already stated, there is nothing to show Mr. Moran or his agent had knowledge of them before he embarked."[23] This decision has been followed in cases where the courts, upon examination of the ticket in issue, concluded that the limitation provisions were not incorporated by reference into the body of the contract.[24]

16. That a time limitation may be raised in bar to plaintiff's action by a motion for summary judgment, see Miller v. International Freighting Corp., Inc., D.C. S.D.N.Y.1951, 97 F.Supp. 60.

17. It is settled law that the ticket constitutes a contract of carriage. Horvath v. Cunard Steamship Co., Ltd., D.C. E.D.N.Y.1952, 103 F.Supp. 356; Witte v. N. V. Nederlandsch Amerikaansche, etc., supra, note 14.

18. Siegelman v. Cunard White Star Ltd., supra, note 6; Horvath v. Cunard Steamship Co., Ltd., supra note 17; Miller v. International Freighting Corp., supra, note 16.

19. Moore v. American Scantic Line, Inc., D.C.S.D.N.Y.1939, 30 F.Supp. 843, 845–847, affirmed, 2 Cir., 121 F.2d 767. See Scheibel v. Agwilines, Inc., supra, note 7, 156 F.2d at page 638: "This chapter provides a comprehensive body of regulations declaratory of federal policy with respect to the specific matters with which they deal."

20. 1897, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039.

21. The Kungsholm, 2 Cir., 1936, 86 F.2d 703; Bellocchio v. Italia Flotte Riunite Cosulich Line Lloyd Sabaudo Navigazione Generale, 2 Cir., 1936, 84 F.2d 975; Maibrunn v. Hamburg-American S.S. Co., 2 Cir., 1935, 77 F.2d 304.

22. Toohill v. Cunard Steamship Co., Ltd., D.C.D.Mass., 130 F.Supp. 128, 1955 A.M.C. 600, points out that actual knowledge of the limitation provisions in the ticket becomes material only when the carrier is unable to prove that such provisions form part of the contract of carriage.

23. The Kungsholm, supra, note 21, 86 F.2d at page 704.

24. See cases cited, note 21. Also, Baron v. Compagnie Generale Transatlantique, 2 Cir., 1939, 108 F.2d 21.

**208**

However, the ticket involved in the instant case is more analogous to that involved in Baron v. Compagnie Generale Transatlantique.[25] In that case the court said: "Everything printed on the ticket rebuts the contention that the contract of carriage was restricted to the blocked space for names, dates and fares. We see no escape from the conclusion that the provision requiring written notice of claim was part of the contract of transportation and was therefore binding on the plaintiff."[26] Moreover, the opinion in the Jansson case[27] supports the conclusion that the limitation provisions of the ticket were incorporated into the contract by reference to it in the body of the contract above the carrier's signature.

No case has been found which supports plaintiff's contention that the ticket, to be binding, must include a provision specifically directing plaintiff's attention to the limitation clauses located on the back of the ticket.[28]

It is not necessary to decide the question whether 46 U.S.C.A., § 183b authorizes defendant to require that notice of the injury with "full particulars" be given within six months after the alleged injury, because we find that plaintiff's failure to institute suit within one year after the injury is a complete bar to her claim.

Motion for summary judgment granted.

25. Ibid.

26. Id., 108 F.2d at page 23.

27. Supra, note 3.

28. Two relatively recent cases illustrate situations where summary judgment was denied. Toohill v. Cunard Steamship Co., Ltd., supra, note 22; Azrak v. Panama Canal Co., D.C.S.D.N.Y.1953, 117 F. Supp. 334. However, as noted previously, the issue of actual knowledge, which as a matter of factual dispute precludes the grant of summary judgment, is material only when defendant is unable to prove that the limitations formed part of the contract of carriage. Thus, in the Toohill case, the court said, 130

F.Supp. at page 129, 1955 A.M.C. at page 602: "If the limitation provisions had been part of the contract of passage the passenger would have been bound by them regardless of whether she read them, provided they were not unlawful in content." In the Azrak case, the court denied the motion for summary judgment because plaintiff "apparently" had not herself signed the ticket and the court felt that there were triable issues of fact as to "how the plaintiff came to be a passenger" and "the circumstances surrounding the issuance of the ticket". 117 F.Supp. at page 335.